UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANGELIKA ALBALADEJO, <br><br> *Plaintiff,* <br><br> v. <br><br> IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> *Defendant*. | Civil Action No. 19-3806 (RC) |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

In a suit brought against Defendant Immigration and Customs Enforcement ("ICE")

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff's revised request

seeks medical summaries and documents pertaining to detainees in ICE custody. Specifically,

Plaintiff argues that the revised request sought records specifically within the control of "at least

two divisions" in ICE, ICE's Air Operations Division ("Air Operations") and ICE's Health

Service Corps ("IHSC"). *See* Pl's Cross Mot. Summ. J. at 9, ECF No. 9-4. Plaintiff argues that

summary judgment is not warranted because ICE failed to search these two divisions.[1] But, as

explained in the attached supplemental declarations, after conducting additional searches of both

IHSC and Air Operations divisions, ICE found no responsive records. *See* Declaration of

Fernando Pineiro ("Pineiro Decl."), attached hereto as Exhibit 1 ("Reply Ex. 1"); Alicea Decl.,

Reply Ex. 2. Accordingly, because there is exists no dispute that ICE conducted searches

---

[1]     Plaintiff's brief concedes that the Unit Chief of the IHSC searched his desktop emails and
found no responsive records. *See* Pl's Opp. at 9; Def's Mot. Summ. J. Ex. 1 ("Mot. Ex. 1") ¶ 30.

"reasonably calculated to uncover all relevant documents," *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), Plaintiff's cross motion for summary judgment should be denied, with judgment entered in favor of ICE.

**ARGUMENT**

**I.     ICE CONDUCTED A REASONABLE SEARCH**

    **a.     Air and Operations Division**

Plaintiff argues that ICE failed to conduct a reasonable search because Plaintiff's revised request sought "written statements authorizing detainee travel by aircraft," and maintains that such records are kept by IHSC as well as "Flight Medical Providers, Flight Nurses" and others. *See* Pl's Opp. at 10. Accordingly, Plaintiff argues that ICE's failure to search its Air Operations Division precludes summary judgment in this matter.

As explained in the attached Pineiro Declaration, ICE did not believe that medical records, specifically, the records identified by Plaintiff, would reasonably be in possession of ICE Air Operations. *See* Pineiro Decl., Reply Ex. 1 ¶ 7. Thus, ICE, initially did not conduct a search of the ICE Air Operations. *Id*. As Mr. Pineiro explains, ICE Air Operations is not a division within IHSC, but rather, it is a separate division within Office of Enforcement and Removal Operations ("ERO"). *Id*. Indeed, the primary goal of ICE Air Operations is to provide aviation support, both domestically and internationally, to the 24 ERO Field Offices that are strategically located throughout the United States. *Id*. ¶ 8. ICE Air Operations' goal is to transport aliens ordered removed from the United States to staging sites in order to complete flights to aliens' countries of origin. *Id*.

Nevertheless, after receiving Plaintiff's Opposition, ICE conducted a supplemental search of ICE Air Operations using the search term "medical," with the search including paper files,

computer files, and email files, which yielded no responsive records. *Id*. ¶ 9. The supervisory

mission support personnel, tasked with conducting the search within Air Operations explained

that "IHSC is the office, reasonably likely in possession of records if existed." *Id*.

Though Plaintiff argues that ICE failed to initially conduct a reasonable search because

ICE Air Operations office was specifically mentioned in her request, ICE determined that Air

Operations was not likely to contain responsive documents as the office does not maintain

medical records.[2] "[T]he mere fact that a particular document was not found does not

demonstrate the inadequacy of a search." *Lockett v. Wray*, 271 F. Supp. 3d 205, 208 (D.D.C.

2017) (quoting *Boyd v. Criminal Div. of Dep't of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007))

(internal alterations omitted). Instead, "the adequacy of a FOIA search is generally determined

not by the fruits of the search, but by the appropriateness of the methods used to carry out the

search." *Lockett*, 271 F. Supp. 3d at 208 (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d

311, 315 (D.C. Cir. 2003)). ICE has demonstrated that it carried out reasonable methods in

executing its search, including its supplemental search. Plaintiff's speculation that documents

must exist in ICE Air Operations is insufficient to preclude summary judgment in this matter.

Accordingly, having done a supplemental search of ICE Air Operations' records, which

yielded no responsive records, there is no genuine dispute as to the reasonableness of ICE's

search.

### b.    ICE Health Service Corps

Second, Plaintiff argues that ICE failed to conduct a reasonable search because Plaintiff

contends that ICE did not adequately search IHSC. Though Plaintiff concedes that "the Alien

---

[2]    Plaintiff also argues that the ICE Air Operations Handbook "contains a treasure trove of places" to look for "the types of records that IAO is required to keep." But as explained below, ICE Air Operations does not maintain medical records.

Health Records System, maintained by [IHSC], could not be searched, except in limited ways, for example, an alien's name or identification number . . . [n]one of that changes ICE's failure to address the failure to search for the forms 'or equivalent.'" Opp. at 12.

ICE explains that Plaintiff is mistaken regarding her assertion that ICE Air Operations contains medical records or equivalent. *Id*. ¶ 12. IHSC has the authority to maintain and collect alien medical health records. *Id*. In his attached declaration, Captain Felix Alicea, the Chief of the IHSC Special Operation Units ("ISOU"), explains that ISOU provides medical flight crew services for the detained alien's care during domestic transfers or international removal, and in support of ICE/ ERO objectives through ICE Air Operations. Alicea Decl., Reply Ex. 2 ¶ 3. Through an ICE and U.S. Coast Guard ("USCG") Memorandum of Understanding ("MOU"), when requested, ISOU assists with medical services to migrants rescued or interdicted at sea on USCG cutters in its Alien Migrant Interdiction Operations ("AMIO"). *Id*. ¶ 4.

Additionally, as discussed in ICE's Opening Brief, alien medical records are maintained by ICE-013 Alien Health Records System, which contains ICE electronic health records. *Id*. ¶ 8. IHSC is the only division within ERO that is authorized to maintain alien medical records, pursuant to 5 U.S.C. § 301; 44 U.S.C. § 3101; 8 U.S.C. §§ 1103, 1222, and 1231; and 42 U.S.C. § 249. *Id*. Importantly, Captain Alicea further explains that ISOU does not have a policy or practice administrating psychotropic medication. Alicea Decl., Ex. 2 ¶ 9. Plaintiff does not provide any evidence or support for her belief that ICE administers psychotropic medications, such that records surrounding the use of these medications would exist.

Accordingly, as IHSC is the only division within ERO authorized to maintain alien medical records, the ICE Air and Operations division would not likely have responsive

documents. ICE was therefore under no obligation to search ICE Air and Operations Division in response to Plaintiff's FOIA request.

      **c.**      **Search Terms**

Plaintiff argues that another reason ICE failed to conduct a reasonable search is due to ICE's failure to use additional search terms when conducting its search. Plaintiff posits that because there were 179 words in her request, "20 or more relevant search terms or phrases could be created to search for responsive records." Pl's Opp. at 13.

ICE provided sufficient explanation in its motion and in the declaration of Toni Fuentes, ECF No. 8-1. To establish the adequacy of ICE's search, Mr. Fuentes explained the search terms used and where the terms were used. *Id*. ¶ 30. These terms included "involuntary," "psychotropic," "special needs," "pregnant," "special handling," "afflicted," and "dangerous," all words found within the text of Plaintiff's narrowed request. *Id*. ¶¶ 9, 30. Finding no records, it is undisputed that ERO was not in possession of records relating to the transfer of detainees in special needs with ICE Air Operations. *Id.*

Further, ICE now notes that in addition to the Unit Chief conducting a search, the Mission Support Specialist also conducted a search of her desktop computer and Outlook account using the search function, with the terms "Involuntary" and "Psychotropic Medications." Pineiro Decl., Ex. 1 ¶ 11. Her search did not yield any records. *Id.*

Importantly, FOIA does not require agencies to use every term that may yield potentially relevant documents. Indeed, the Court in *Bigwood v. Dep't of Def.*, 132 F. Supp. 2d 124, 140 (D.D.C. 2015), rejected a similar argument where plaintiff alleged that the agency was not entitled to summary judgment where it did not "specify what additional words or phrases, if any, were 'included' in its electronic search efforts, or where those additional terms were used."

In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. *Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009). "[T]here is no bright-line rule requiring agencies to use the search terms proposed" by a plaintiff. *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015). Rather, a federal agency has "discretion in crafting a list of search terms that 'they believe[ ] to be reasonably tailored to uncover documents responsive to the FOIA request.'" *Agility Public Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, No. 14–0946, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (quoting *Physicians for Human Rights*, 675 F. Supp. 2d at 164). Where the search terms are reasonably calculated to lead to responsive documents, a court should neither "micromanage" nor second guess the agency's search. *Id.*; *see also Johnson v. Exec. Off. for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micromanage the executive branch."); *Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C.2015) ("Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior.").

The same can be said here. ICE identified relevant search terms based on the nature of the request. At the heart of Plaintiff's request, she sought records "that authorize the involuntary administration of psychotropic medications or provide clearance for detainees with special medical needs or psychiatric conditions, such as pregnant or 'special handling'/ 'afflicted/dangerous' cases…" ICE's use of the terms "involuntary," "psychotropic," "special needs," "pregnant," "special handling," "afflicted," and "dangerous" – all terms used by Plaintiff

and identified in her request – was therefore reasonable, and, "the Court need not second guess the agency's search." *Physicians for Human Rights*, 675 F. Supp. 2d at 164.

## II.      ICE'S DECLARATIONS SUFFICIENTLY DESCRIBED THE SEARCH METHODS.

Plaintiff argues that ICE has failed "describe how it determined that no responsive records were located," Opp. at 15, and relies on *Heartland Alliance for Human Needs & Human Rights v. ICE*, 406 F. Supp. 3d 90 (D.D.C. 2019). Plaintiff cites to *Heartland* to argue that in this case, ICE's search was not reasonable because it did not target a subcomponent of ERO (in this case, Air Operations), and because the Fuentes declaration does not reasonably explain the agency's search methods. Opp. at 17-18. And while ICE did not initially search Air Operations because it determined that Air Operations did not possess medical records, the attached Pineiro Declaration provides ICE's explanation as to why Air Operations was not initially searched. Moreover, as explained above, ICE did in fact conduct a supplemental search of Air Operations, which yielded no responsive documents. Plaintiff's argument that ICE failed to search Air Operations is therefore moot.

Plaintiff also argues that "ICE never stated in their search declaration that no other record system was likely to produce records. At the very least, an agency must make this conclusion." Opp. at 18. But Plaintiff's assertion is incorrect. ICE identified which locations would likely have responsive records, and after undertaking a thoughtful search with no results, determined that "all locations reasonably likely to contain responsive records were searched." Fuentes Decl. (ECF No. 8-1) ¶ 28. Moreover, while ICE recognized that some responsive documents may exist in its Alien Health Records System, it explained why a search of that system would hoist an undue burden on the agency, as the files are not maintained in a way that is searchable based on

Plaintiff's FOIA request. Plaintiff concedes that the "Alien Health Records System, maintained by ICE Health Services Corps, could not be searched, except in limited way[.]" Opp. at 12.

Further, Plaintiff argues that Defendant has failed to provide "no meaningful details" as to ICE's "computer programs" and "backup systems." Opp. at 19. Plaintiff alleges that ICE failed to provide information regarding the "agency's backup system and explain[] the obstacles to searching the system." Opp. at 19. Plaintiff further asks the Court to "direct ICE to provide an affidavit from an information-technology professional like the affidavit cited in *Safety Research & Strategies, Inc. v. U.S. Dep't of Transp.*, 903 F. Supp. 2d 1, 7 (D.D.C. 2012)." *Id*. But an affidavit from an information technology professional is not necessary here.

As an initial matter, Plaintiff should be precluded from arguing that ICE failed to search its backup tapes as Plaintiff failed to exhaust this argument at the administrative level. *See* Fuentes Decl. (ECF No. 8-1) Ex. E (Plaintiff's administrative appeal). Nowhere in the appeal does Plaintiff identify ICE's alleged failure to search "backup tapes" as an underlying ground for ICE's alleged inadequate search. Without putting the agency on notice of this alleged failure, Plaintiff did not give Defendant "a fair and full opportunity to adjudicate [a party's] claims,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Khine v. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324 (D.D.C. 2018) (quoting *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 93 (D.D.C. 2013)). Accordingly, the Court need not consider the merits of Plaintiff's argument on the issue of ICE's backup tapes.

Nevertheless, should the Court find that Plaintiff did not fail to exhaust her administrative remedies regarding ICE's backup tapes, the attached declaration of John Truong, the Chief of Information Technology Specialist in the Office of the Chief Information Officer ("OCIO")

Operations division, explains why a search of ICE's backup tapes would be futile. Truong Decl., Reply Ex. 3. As Mr. Truong explains, prior to 2008, ICE periodically archived the data on its email servers using various backup tapes. *Id.* ¶ 8. However, "the intent of this backup system was not to create a permanent or semi-permanent archive of the agency's emails, but was, rather, to allow the agency to restore its email and file servers in the event of catastrophic loss of data. In other words, the backup tapes were not used for record or data retention purposes but rather to restore the email environment to working conditions in an event of an emergency." *Id.* ¶ 8. Further, the backup tapes created prior to December 2008 were stored in a de-centralized manner. *Id.* ¶ 9. The system was configured such that email data was stored in various systems dispersed strategically throughout the country, and tape creation and storage was managed independently at each site, as opposed to a centralized storage location or scheme. *Id.*

Indeed, ICE does not have the capability to search all backup tapes that remain from before 2008. *Id.* ¶ 12. First, the ability to search the contents of tapes dated 2008 and earlier depends on the system used to send and/or receive the emails. *Id.* ¶ 13. For instance, emails sent or received after the 2006 conversion to Microsoft Outlook could be searched, retrieved, and recovered. But for emails sent or received prior to the 2006 conversion, such as those sent or received on cc:Mail, ICE does not have the capability to search, retrieve, or recover those emails. *Id.*

Second, the ability to search any emails from before 2008 depends on the existence of backup tapes for the particular emails. *Id.* ¶ 13. In other words, the search ability is dependent upon locating the physical tape at the appropriate field office location, the possibility that the tapes were overwritten, and the possibility of damage or deterioration of the tape. *Id.* Backup tapes are often decommissioned due to age and damage to the tapes. *Id.* Most of the tapes from

1998 to 2006 are not available because they were discarded due to damage from repeated use or

old age, in addition to having been made obsolete by the introduction of a new system in 2006.

*Id*.

Beginning in December 2008, ICE implemented a system for journaling email known as

the Enterprise Vault ("EV"). *Id*. ¶ 10. Through this system, agency emails are maintained in

accordance with applicable record retention schedules. *Id*. Under this system, emails from

December 2008 through July 2018 were backed up in such a way as to be searchable and

recoverable. *Id*. Starting in July 2018, ICE OCIO began to store email in the Microsoft 0365

system. Under this system, emails from July 2018 to present are backed up in such a way as to be

searchable and recoverable. *Id*. ¶ 11.

 ICE further explains that in order to conduct a search through the Enterprise Vault

system, it would need names of custodians and time frames for the request. *Id*. ¶ 14. ICE would

also need to use the Symantec Discovery Accelerator tool to perform retrieval of the email from

EV based on the time frame and custodian name.[3] *Id*. However, given that ICE has not found any

potentially responsive documents through the searches it has already conducted, ICE determined

that a search of this system, even if it had the names of custodians and the timeframe for the

search, would be futile. *Id*. ¶ 12; *see also Ancient Coin Collectors Guild v. Dep't of State*, 866 F.

Supp. 2d 28, 34 (D.D.C. 2012) (holding that even if the electronic backup system did contain

additional responsive documents, a search of the backup tapes would be inconvenient and futile,

thus finding defendant was entitled to summary judgment). Accordingly, Plaintiff's argument

that ICE should be required to search its backup tapes, when such a search would be futile and

---

[3]     ICE is not able to perform a search through this system without a custodian name and a
timeframe. Truong Decl. ¶ 14.

require considerable effort from ICE, should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should grant ICE summary judgment on Plaintiff's

claims in this action and deny Plaintiff's cross-motion for summary judgment.

Dated:  September 25, 2020          Respectfully submitted,

                                    MICHAEL R. SHERWIN
                                    Acting United States Attorney

                                    DANIEL F. VAN HORN, D.C. Bar # 924092
                                    Chief, Civil Division

                          By:       */s/ Brenda González Horowitz*
                                    BRENDA GONZÁLEZ HOROWITZ
                                    D.C. Bar No. 1017243
                                    Assistant United States Attorney
                                    U.S. Attorney's Office, Civil Division
                                    555 Fourth Street, N.W.
                                    Washington, D.C. 20530
                                    Tel: (202) 252-2512
                                    Brenda.Gonzalez.Horowitz@usdoj.gov

                                    *Counsel for Defendant*