**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ANGELIKA ALBALADEJO, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-3806 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 8, 10 |
| | : | | |
| IMMIGRATION AND CUSTOMS ENFORCEMENT, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

In this case brought under the Freedom of Information Act ("FOIA"), Plaintiff, a California-based investigative journalist, seeks documents from Immigration and Customs Enforcement ("ICE") regarding air transportation of noncitizen detainees with certain medical conditions. Based on Plaintiff's research, she believes that ICE Air Operations ("IAO"), the division responsible for transporting detainees by air, possesses air travel authorization documents and medical summaries for detainees with medical considerations such as psychological conditions or pregnancy. Plaintiff submitted a FOIA request for any medical documents related to authorizations to air transfer detainees who may have special medical needs. ICE conducted a search for responsive documents and determined that searching the agency's medical record system, which likely does contain responsive documents, would be unduly burdensome and that no responsive records exist in any other location. Consequently, ICE has not provided any documents to Plaintiff. The parties have both moved for summary

judgment based on the adequacy of ICE's search for responsive records. For the reasons set forth below, the Court finds that ICE has not yet justified the adequacy of its search for responsive documents. The Court, therefore, denies the motions for summary judgment and directs ICE to reassess its search for responsive records.

## II.  BACKGROUND

### A.  Plaintiff's FOIA Request

Plaintiff is an independent investigative journalist currently focusing on immigration enforcement. Compl. ¶ 1–3, ECF No. 1. Based on her review of an internal agency policy guide, the ICE Air Operations Handbook, *see* Def.'s Mot. Summ. J. Ex. 5 ("IAO Handbook"), ECF No. 8-5, she learned that "medical providers must provide clearance for air travel for detainees with medical considerations . . . [and that] these considerations and clearances must be annotated on a medical summary," Compl. ¶ 16.

Plaintiff submitted the following request for documents:

> All U.S. Immigration and Customs Enforcement (ICE) medical summaries (or equivalent medical forms) for individuals transported between 2003 and the present by the ICE Air Operations (IAO) division of the Office of Enforcement and Removal Operations (ERO). These medical forms include the ICE Medical Summary, Medical/Mental Health Transfer Summary and Medical Summary of Alien in Transfer, as well as written statements from ICE-contracted physicians or officials authorizing travel by aircraft. The medical summaries are completed by ICE Health Services Corps (IHSC) officials, Flight Medical Providers, Flight Nurses and Flight Officers in Charge/Deportation Officers.

Fuentes Decl. Ex. A, ECF No. 8-1. In response, ICE informed Plaintiff that her request was too broad in scope and suggested that she narrow it. *See* Fuentes Decl. Ex. B. Plaintiff then submitted a revised and narrowed request for documents:

> All U.S. Immigration and Customs Enforcement (ICE) medical summaries—or equivalent forms, such as the Medical/Mental Health Transfer Summary, Medical Summary of Alien in Transfer, or other written statements authorizing detainee travel by aircraft—that authorize the involuntary administration of psychotropic

>medications or provide clearance for detainees with special medical needs or psychiatric conditions, such as pregnant or "Special Handling"/"Afflicted/Dangerous" cases, transported for removal between FY2008 and the present by the ICE Air Operations (IAO) division of the Office of Enforcement and Removal Operations (ERO).

Fuentes Decl. Ex. C.  Alongside this revised request, Plaintiff indicated that the requested forms are submitted "to the relevant ERO field offices and IAO's headquarters, the Arizona Removal Operations Coordination Center (AROCC) located at the Phoenix-Mesa Gateway Airport."  *Id.*  ICE then issued a final response to Plaintiff's FOIA request stating that no responsive records had been found.  *See* Fuentes Decl. Ex. D.

Plaintiff administratively appealed.  *See* Fuentes Decl. Ex. E.  She argued that ICE failed to conduct an adequate search because the agency did not describe how it searched for responsive records or why the searched locations were reasonable.  *Id.* at 4.[1]  Plaintiff stated that ICE should have searched for records at the IAO headquarters, the Arizona Removal Operations Coordination Center ("AROCC"), and IAO's other locations around the country.  *See id.*  Plaintiff also argued that ICE has released similar documents to other news outlets in the past.  *See id.* at 4–5, 7.  ICE denied her appeal and stated that "[u]pon a complete review of the administrative record . . . the search was adequate in all respects and was reasonably calculated to uncover all relevant documents."  Fuentes Decl. Ex. F.  Plaintiff subsequently filed this lawsuit seeking judicial review of ICE's decision.  *See generally* Compl.  The parties have both moved for summary judgment.  *See* Def.'s Mot. Summ. J. & Mem. of P. & A. Supp. ("Def.'s Mot."), ECF No. 8; Pl.'s Mem. of P. & A. Opp'n Def.'s Mot. Summ. J. and Supp. Pl.'s Cross Mot. Summ. J. ("Pl's Opp'n"), ECF No. 10-4.  The parties' disagreement centers on the adequacy of the agency's search for responsive records.

---

[1] The Court cites here the administrative appeal's internal page numbers.

## B. Declarations Supporting Motions for Summary Judgment

In support of its motion for summary judgment, ICE submitted four declarations. *See* Fuentes Decl.; Pineiro Decl., ECF No. 14-1; Alicea Decl., ECF No. 14-2; Truong Decl., ECF No. 3. Toni Fuentes, the Deputy Officer of ICE's FOIA Office, submitted a declaration that outlined the procedural history of Plaintiff's FOIA request and explained how ICE searched for responsive records. *See* Fuentes Decl. ¶¶ 5–13, 28–33. The declaration indicates that ICE's Enforcement and Removal Operations ("ERO") Information Disclosure Unit directed the ICE Health Services Corps ("IHSC") to conduct a search for responsive records. *Id.* ¶¶ 27–30. The Unit Chief of the IHSC Special Operations Unit, who ICE determined "would be the person in the office reasonably likely to have responsive records," "searched his desktop computer and Outlook email account" for the following terms: involuntary, psychotropic, special needs, pregnant, special handling, afflicted, and dangerous. *Id.* ¶ 30. "The Unit Chief's search resulted in no records being located." *Id.* Ms. Fuentes's declaration further explains that IHSC's system of medical records does not separately track cases involving air transport authorizations for detainees with special medical considerations and, therefore, "a search would have been useless." *Id.* ¶ 33.

Fernando Pineiro, the Deputy FOIA Officer for ICE, submitted a declaration in response to Plaintiff's cross motion for summary judgment. Pineiro Decl. ¶ 6. His declaration admits that ICE did not initially conduct a search for responsive documents within IAO. *Id.* ¶ 7. In light of Plaintiff's arguments, however, ICE instructed IAO to conduct a supplemental search. *Id.* Mr. Pineiro's declaration indicates that "the supervisory mission support personnel" within IAO, "based on his knowledge and expertise of the mission of the office, searched paper files, his computer files, and Outlook by using the search function, with the term 'medical.'" *Id.* ¶ 9. The

4

declaration then indicates that a Mission Support Specialist within IHSC "conducted a search of her desktop computer and Outlook account using the search function, with the terms 'Involuntary' and 'Psychotropic Medications.'" *Id.* ¶ 11. Neither search uncovered responsive records. *See id.* ¶¶ 9, 11. Mr. Pineiro's declaration states that IAO does not have "medical records, or medical summary records, or equivalent." *Id.* ¶ 12.

Captain Felix A. Alicea, RN, the Unit Chief for IHSC's Special Operations Unit, also submitted a declaration in response to Plaintiff's opposition and motion. Alicea Decl. ¶ 1. Mr. Alicea's declaration reiterates portions of the Fuentes Declaration, but adds that "[Mr. Alicea] and another employee, who have been the oldest members of this Unit, made every effort to search for and locate any potentially responsive records to Plaintiff's FOIA request." *Id.* ¶ 7.[2] Furthermore, Mr. Alicea's declaration states that, based on his expertise and knowledge, IHSC's Special Operations Unit "does not have a policy or practice [of] administrating psychotropic medication." *Id.* ¶ 9.

Finally, ICE submitted the declaration of John Truong, the Enterprise Service Branch Chief for the Office of the Chief Information Officer of ICE. Truong Decl. ¶ 1. Mr. Truong provides information about ICE's electronic backup systems and the difficulties associated with searching for records created prior to 2008. *See id.* ¶¶ 8–15.

In opposition to the declarations submitted by ICE, Plaintiff submitted a declaration of her own. *See* Albaladejo Decl., ECF No. 10-1. In it, Plaintiff explains her background as a journalist and some of the research underlying her FOIA request. *See id.* ¶¶ 1–19. She points to evidence that she claims undermines the adequacy of ICE's search for responsive records. First,

---

[2] The Alicea Declaration has apparently mislabeled paragraphs. The Court here cites the second paragraph labeled as paragraph number seven.

5

she explains that the IAO Handbook indicates that "medical providers must provide clearance for air travel for detainees with medical considerations, such as psychological issues or pregnancy." *Id.* ¶ 19.  Plaintiff suggests that the IAO Handbook, which details how ICE authorizes travel for detainees with special medical considerations, and her communications with ICE should have prompted the agency to search additional components of IAO.  *See id.* ¶¶ 33, 35, 39–43.  In addition to the IAO handbook, Plaintiff points to IAO teleconference meeting minutes, which she attached as an exhibit, *see* Exhibit 101, ECF No. 10-2, that discuss obtaining air travel authorizations for detainees with medical conditions and that she claims "show the agency failed to follow leads likely to locate the requested records," Albaladejo Decl. ¶ 34.

### III.  LEGAL STANDARD

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA requests thus provide individuals with the opportunity to obtain access to federal agency records, except to the extent that such records are protected from public disclosure by one of nine exemptions.  *See* 5 U.S.C. § 552(a)(3), (a)(4)(B), (b), (c); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017).  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see, e.g.*, *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (concluding that unsubstantiated claims of factual controversies cannot defeat a summary judgment decision in a FOIA case).  FOIA cases are typically resolved through summary judgment because in FOIA

cases there is rarely any factual dispute, instead, these cases center on how the law is applied to the records at issue. *See Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *see also Gray v. Southwest Airlines Inc.*, 33 Fed. Appx. 865, 868 n.1 (9th Cir. 2002) (citing *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996)). Accordingly, in a FOIA suit, summary judgment is appropriate "if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

## IV.  ANALYSIS

Because ICE has not produced any responsive records to Plaintiff, the parties' disagreement centers on the adequacy of the agency's search. Based on the parties' arguments and the record, the Court understands this disagreement to focus on the narrow question of whether ICE should have conducted a more robust search for records within IAO.[3]

---

[3] Plaintiff has conceded that searching ICE's database of medical records would be unduly burdensome. *See* Pl.'s Opp'n at 12 ("Plaintiff concedes that the Alien Health Record System, maintained by [IHSC], could not be searched, except in limited ways, for example, an alien's name or identification number."). The Court, therefore, does not discuss this point further. The dispute is further narrowed by Plaintiff's revised FOIA request, which is limited to records from 2008 and later. *See* Fuentes Decl. Ex. C. For this reason, the Court finds that much of the Truong Declaration, which discusses ICE's backup systems for records predating 2008, is irrelevant to the present dispute. *See* Truong Decl. ¶¶ 8–15. In conducting a further search for documents in other locations, ICE should be prepared to explain whether it searched backup records created after 2008 in those locations and, if not, explain its decision to not conduct such a search.

An "agency must demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (quoting *Weisberg v. U.S Dep't of Justice*, 705 F.2d 1344, 1350–51 (D.C. Cir. 1983)). In assessing an agency's search for records, courts "appl[y] a 'reasonableness' test to determine the 'adequacy' of a search methodology . . . consistent with congressional intent tilting the scale in favor of disclosure." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) (quoting *Weisberg*, 705 F.2d at 1351). Under this test, an agency must "make more than perfunctory searches" and must "follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). An "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

To determine whether an agency's search was adequate, courts "may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Mobley v. C.I.A.*, 806 F.3d 568, 580–81 (D.C. Cir. 2015) (quoting *Oglesby*, 920 F.2d at 68). "Agency affidavits . . . are 'accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Id.* at 581 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) (internal quotation omitted). However, a plaintiff may provide countervailing evidence as to the adequacy of the agency's search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003). "[I]f review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment is

inappropriate." *Valencia-Lucena*, 180 F.3d at 326 (quoting *Founding Church of Scientology, D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

ICE argues that the declarations submitted in support of its motion for summary judgment demonstrate the adequacy of its search for records. *See* Def.'s Reply at 2–7, ECF No. 14. Plaintiff, in opposition, argues that the agency failed to meaningfully search IAO's records and ignored "a treasure trove" of leads contained in the IAO Handbook. Pl.'s Opp'n at 14. Throughout her opposition, she references the evidence cited in her declaration to suggest that ICE failed to search locations where responsive records may be located. *See id.* at 10 (referencing IAO meeting minutes exhibit); *id.* at 10–11 (referencing IAO email mailboxes for domestic missions); *id.* at 14 (referencing IAO Handbook). She further argues that the agency's search was inadequate because ICE failed to search for the forms her request specifically mentioned. *Id.* at 12–13. The agency points to the supplemental search of IAO paper files, computer files, and email files and states that the fact that no responsive documents were found does not demonstrate the inadequacy of the search. *See* Def.'s Reply at 2–3 (citing *Lockett v. Wray*, 271 F. Supp. 3d 205, 208 (D.D.C. 2017)). The agency, however, does not engage with the IAO handbook or other evidence, such as the IAO meeting minutes, presented by Plaintiff. Instead, because the IAO supervisory mission support personnel found no responsive records and because he explained that IHSC would be the component most likely to possess responsive records, ICE argues that it "has demonstrated that it carried out reasonable methods in executing its search, including its supplemental search." *Id.* at 3.

In light of the evidence presented by Plaintiff, the Court finds that ICE has not demonstrated that its search for records was adequate. As an initial matter, the Court notes that the Pineiro Declaration, which details the search for records within IAO, leaves much to be

9

desired. It states that the supervisory mission support personnel "searched paper files, his computer files, and Outlook by using the search function, with the term 'medical.'"[4] Pineiro Decl. ¶ 9. The declaration does not state why a search of this individual's files would be "reasonably calculated to uncover all relevant documents." *Weisberg*, 745 F.2d at 1485 (quoting *Weisberg*, 705 F.2d at 260). It is not clear whether this individual would normally maintain transfer authorizations or medical summaries for detainees being transported by air on his computer or among his files. The agency's declaration regarding the search of IAO records amounts to a three-sentence paragraph and is sparse on details. *See* Pineiro Decl. ¶ 9. More information is required for the Court to determine whether the agency adequately searched its records. *See Mobley*, 806 F.3d at 580–81.

More problematic, however, is ICE's failure to address any of the evidence presented by Plaintiff. The IAO Handbook supports Plaintiff's contention that air transport authorizations that include medical summaries are sent to IAO prior to transporting detainees. For example, the IAO Handbook states that "a medical summary . . . must accompany all aliens for transfer and/or removal." IAO Handbook at 11. Medical documents must be attached to Form I-216.[5] *Id.* The IAO Handbook further states that "cases requiring psychological care should be identified on the I-216 as 'Special Handling' cases in the 'Afflicted/Dangerous' column" and that "*IAO Mesa must be apprised of these cases* so that proper notification and arrangements can be made." *Id.* at 18 (emphasis added). Similar advance approval must be obtained for transportation of

---

[4] The Court notes here that Plaintiff broadly takes issue with the search terms used by the agency. *See* Pl.'s Opp'n at 13–14. Despite this objection, the Court is less concerned with the search terms used than with where and in what manner they were employed. *See Agility Pub. Warehousing Co. K.S.C., v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. 2015) (finding that an agency has discretion to craft a list of search terms). But to synthesize Plaintiff's request to a single search term is plainly inadequate.

[5] Form I-216 is the Record of Person and Property Transferred. *See id.* at 5.

pregnant detainees. *See id.* The handbook indicates that finalized I-216 forms—which, again, must have medical documents attached—must be received, by email, prior to travel and lists various "ICE Air Mailboxes" for various countries. *See id.* at 9–10. Moreover, "[t]en copies of Form I-216 must be presented prior to commencing the boarding process on all ICE Air flights." *Id.* at 10.[6] All this strongly suggests that IAO receives medical summaries via email prior to transporting detainees. In its declarations and briefing, ICE makes no effort to confront this evidence or to explain why the "ICE Air Mailboxes," or other offices within IAO (including IAO Mesa), would not reasonably contain responsive records. *See Valencia-Lucena*, 180 F.3d at 327 (finding search inadequate where "the Coast Guard provides no explanation for why it did not search" a location likely to house responsive records). There may be good reasons these other locations were not searched, but if there are, ICE does not provide them.

The IAO teleconference meeting minutes cited by Plaintiff—which ICE ignored—provide further support for her position. In these documents, Field Offices are reminded that "advanced approval and coordination is required for any special handling cases, which include medical and mental health cases" and that such "[n]otification must be given to the Assistant Attaché for Removal, *IAO*, as well as any staging facility involved in staging and transferring the detainee." Exhibit 101 at 3 (emphasis added).[7] The meeting minutes suggest that approval emails must be obtained from IAO and brought to the flight line. *See id.* at 5 ("Medical cases must be approved by the receiving office, as well as by ICE Air. Please bring a copy of the approval e-mail to the flight line."); *see also id.* at 6 ("IAO requests notification of medical cases

---

[6] Requiring ten copies of Form I-216 suggests wide distribution not confined to a single office. This in turn suggests a wide distribution of the medical documents and summaries that must accompany Form I-216. This evidence undermines ICE's position that the *only* place responsive records exist is within the medical records database that is too burdensome to search.

[7] The Court here cites the page number generated by the electronic filing system.

11

five business days prior to departure."). The agency makes no attempt to explain how Plaintiff's evidence fits into its search for records. Instead, ICE states that "Plaintiff's speculation that documents must exist in ICE Air Operations is insufficient to preclude summary judgment." Def.'s Reply at 3. But the Court finds that Plaintiff brings more than mere speculation; the evidence in the record "reveals 'positive indications of overlooked materials.'" *Valencia-Lucena*, 180 F.3d at 327 (quoting *Founding Church of Scientology*, 610 F.2d at 837); *see also id.* at 325 (stating an agency must "follow through on obvious leads to discover requested documents").[8]

Based on the countervailing evidence presented by Plaintiff, and ICE's failure to address that evidence, the Court finds that the agency has not demonstrated the adequacy of its search for responsive records. As such, ICE is directed to conduct an additional search for responsive records in light of the evidence presented by Plaintiff and discussed by the Court (or provide a better explanation for why another search is unnecessary). Because there is such a disconnect between ICE's explanation of its search and the evidence provided by Plaintiff, on renewed motion for summary judgment, ICE must provide a much clearer explanation of what documents are created as part of the air transportation authorization process at issue, where those documents go and ultimately reside, and whether those places were searched (i.e., a cradle to grave description of the information flow). Although ICE suggests that the information requested

---

[8] The scope of the search and positive indications of overlooked materials in this case distinguishes it from *Heartland All. for Human Needs & Human Rights v. U.S. Immigration & Customs Enforcement*, 406 F. Supp. 3d 90 (D.D.C. 2019). There, ICE submitted declarations that established that multiple individuals searched their individual files and office shared drives. *Id.* at 112–13. Moreover, the Court found that the plaintiff failed to provide evidence undermining the adequacy of ICE's search. *See id.* at 114. Here, Plaintiff has pointed to evidence from internal agency documents that suggests ICE overlooked specific locations. Moreover, in this case, ICE's explanation of its search within IAO does not compare to the detailed declarations submitted in *Heartland*.

resides *only* in individual aliens' records that cannot be easily searched, the evidence presented by Plaintiff suggests otherwise. Until ICE provides a much more detailed explanation, summary judgment in its favor is inappropriate.[9] Given that ICE will reassess its search for responsive documents, Plaintiff's motion for summary judgment is premature.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 8) is **DENIED** and Plaintiff's motion for summary judgment (ECF No. 10) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 2, 2021                                                                          RUDOLPH CONTRERAS
                                                                                                                       United States District Judge

---

[9] If ICE fails to provide sufficient detail in the next round of briefing, the Court would consider a request for a deposition under Federal Rule of Civil Procedure 30(b)(6) on the creation and distribution of the requested records.